UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

THE SCOTTS COMPANY LLC, and
OMS INVESTMENTS, INC.,

    Plaintiffs,

        v.                JURY TRIAL DEMANDED

THE PROCTER & GAMBLE
COMPANY,

    Defendant.

## COMPLAINT

Plaintiffs, The Scotts Company LLC and OMS Investments, Inc. (collectively "**Scotts**"), for their Complaint against Defendant, The Procter & Gamble Company ("**Defendant**"), allege as follows:

### NATURE OF THE CASE

1. Headquartered in central Ohio for over 150 years, Scotts is one of the world's leading manufacturers of branded consumer lawn and garden products. In the course of its long history, Scotts has developed many of the most recognizable and valuable brands in its industry, including the MIRACLE-GRO brand and its famous MIRACLE-GRO trade dress, which Scotts has used extensively in United States commerce for decades on its market-leading consumer lawn and garden products.

2. Scotts has recently learned of Defendant's imminent entry into the market for consumer lawn and garden products—a move that expands Defendant's business beyond its previous role as a seller of household products. Scotts welcomes new competitors the consumer

1

lawn and garden market using traditional—and legal—methods of competition. What Scott does not welcome, however, is Defendant's brazen attempt to gain immediate and significant market share by entering the consumer lawn and garden market with a package design that is, at the very least, confusingly similar to Scotts' famous MIRACLE-GRO trade dress. Defendant's entry reflects a transparent attempt to piggyback off the goodwill Scotts has built in its MIRACLE-GRO trade dress—an important mission that Scotts continues to pursue through the expenditure of significant time, money, and effort.

3. Defendant's conduct constitutes unfair competition and infringement and dilution of Scotts' intellectual property rights. Defendant's unlawful conduct is knowing, intentional, and designed to trade on the reputation and goodwill that Scotts has developed through decades of extensive promotion and sales of its superior MIRACLE-GRO products under the MIRACLE-GRO trade dress.

4. Scotts will be injured by Defendant's unlawful conduct and will suffer irreparable harm unless and until the Court enjoins Defendant from using its confusingly similar trade dress for its new lawn and garden products in the United States.

**THE PARTIES**

5. The Scotts Company LLC is an Ohio limited liability company with its principal place of business at 14111 Scottslawn Road, Marysville, Ohio 43041, and is the licensee of various intellectual property assets owned by OMS Investments, Inc. ("**OMS Investments**"), including the MIRACLE-GRO trade dress that is the subject of this Complaint.

6. OMS Investments is a Delaware corporation with an office at 10250 Constellation Blvd., Suite 2800, Los Angeles, California 90067, and is an affiliate of The Scotts Company, LLC. OMS Investments owns the MIRACLE-GRO trade dress, the subject of this Complaint.

7. On information and belief, Defendant is an Ohio corporation with a principal place of business at One Procter & Gamble Plaza, Cincinnati, Ohio 45202.

8. On information and belief, Defendant, through its agents, representatives, or affiliates, have done, and are doing, business in the Southern District of Ohio, and have engaged in acts and/or omissions within this District that are causing Scotts to suffer injury, including not limited to injury within this District.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over the Counts in this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338(a)-(b), and 1367.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and a substantial part of the events giving rise to Scotts' claims occurred in this District.

## BACKGROUND FACTS

### Scotts' Famous MIRACLE-GRO Trade Dress

11. Throughout its history, Scotts has developed and strengthened an exceptional national reputation for inventing, marketing, and selling high quality consumer lawn and garden products.

12. For decades, Scotts has packaged and sold its MIRACLE-GRO lawn and garden products in its now ubiquitous MIRACLE-GRO trade dress, which is comprised of: (1) a green and yellow color combination; (2) with each color presented as a separate horizontal band and the top color taking up a smaller ratio than the bottom color; (3) with the two bands sharing a common border that runs horizontally along the package; (4) with a straight line dividing the two colored

3

bands; and (5) a circular horizontally centered graphic element. The unique composition renders Scotts' MIRACLE-GRO trade dress inherently distinctive.

13. Examples of Scotts' MIRACLE-GRO trade dress are shown below:












DMS 44623171.1

14. Scotts has devoted extraordinary resources to building consumer recognition of its highly distinctive MIRACLE-GRO trade dress. As a result, Scotts enjoys strong common law trademark rights in its MIRACLE-GRO trade dress, embodying invaluable goodwill.

15. Scotts prominently uses its MIRACLE-GRO trade dress on packaging for consumer lawn and garden products, and in nationwide advertising and promotional content for those products, including but not limited to print advertisements, television advertisements, brochures, as well as social media, websites, and other online content.

16. Beginning decades before Defendant's adoption of the Accused Packaging (defined below), the relevant consumers have come to associate Scotts' MIRACLE-GRO trade dress with Scotts because of, among other things, Scotts' lengthy, extensive, and continuous use of the trade dress in U.S. commerce.

17. Moreover, Scotts' MIRACLE-GRO trade dress is famous and has been famous since long before Defendant's use of the Accused Packaging.

18. Scotts has enhanced its common law trademark rights in its MIRACLE-GRO trade dress by obtaining a federal registration for the trade dress. Specifically, on March 3, 1998, the U.S. Patent and Trademark Office ("**USPTO**") issued U.S. Trademark Registration No. 2,139,929 for the MIRACLE-GRO trade dress, describing the mark as "a rectangular shaped box in the colors green and yellow" and reciting *plant food*, in International Class 1 (hereinafter referred to as "**the Registration**"). (Exhibit A.) OMS Investments owns the Registration, which is valid, subsisting, and in full force and effect.

5

19. Moreover, the Registration has achieved incontestable status pursuant to 15 U.S.C. § 1065. The Registration therefore serves as conclusive evidence of the validity of the Registration and of OMS Investments' ownership and exclusive right to use the registered mark in United States commerce in connection with the recited goods. *See* 15 U.S.C. § 1115(b).

20. A true and correct copy of documents retrieved from the USPTO's online Trademark Status & Document Retrieval database (https://tsdr.uspto.gov/) evidencing the registered and incontestable status and OMS Investments' ownership of the Registration is attached as Exhibit B. Specimens of use that OMS Investments (or its predecessors-in-interest) filed with the USPTO showing the trade dress as used in United States commerce over several decades are included in Exhibit C.

21. OMS Investments owns the common law trademark rights in the MIRACLE-GRO trade dress and the Registration. Plaintiff, The Scotts Company LLC, uses the MIRACLE-GRO trade dress pursuant to a license from OMS Investments (hereinafter, Scotts' common law trademark rights and registered rights in its MIRACLE-GRO trade dress are collectively referred to as the "**MIRACLE-GRO Trade Dress**").

22. Scotts, itself and through others, markets and sells its lawn and garden products under its MIRACLE-GRO Trade Dress throughout the United States, including in brick and mortar and online retail stores in this District, as well as in the direct-to-consumer market, such as via Scotts' website https://www.miraclegro.com.

23. Scotts' MIRACLE-GRO Trade Dress is inherently distinctive, has become favorably known among consumers as used exclusively in connection with Scotts' products, and has become an extremely valuable symbol of the source of Scotts' MIRACLE-GRO products, of their high quality, and of the goodwill associated with its MIRACLE-GRO Trade Dress.

DMS 44623171.1

24. In addition, as a result of Scotts' significant sales of products in its MIRACLE-GRO Trade Dress, Scotts' widespread use of its MIRACLE-GRO Trade Dress, Scotts' extensive advertising, marketing, promotion, and unsolicited publicity for its MIRACLE-GRO Trade Dress, and consumers' widespread recognition of its MIRACLE-GRO Trade Dress, Scotts' MIRACLE-GRO Trade Dress is famous and has been since long before Defendant adopted and began using the Accused Packaging. In the alternative, Scotts' MIRACLE-GRO Trade Dress has acquired secondary meaning.

**Defendant's Infringing Acts**

25. On information and belief, Defendant sells a variety of household products.

26. On information and belief, Defendant has not historically sold consumer lawn and garden products.

27. On information and belief, Defendant has recently entered the market for consumer lawn and garden products by introducing a new weed killer. *See, e.g.*, www.spruceit.com:



28. On information and belief, Defendant advertises and sells its new week killer in the same channels, to the same consumers, and at the same retail outlets where Scotts' MIRACLE-GRO products are advertised and sold.

DMS 44623171.1

29. On information, and belief, Defendant sells its new weed killer in the containers shown below (and above) (the "**Accused Packaging**"):

    

30. The Accused Packaging shares, in nearly identical form, several significant elements of Scotts' MIRACLE-GRO Trade Dress, namely: (1) a green and yellow color combination; (2) with each color presented as a separate horizontal band and the top color taking up a smaller ratio than the bottom color; (3) with the two bands sharing a common border that runs horizontally along the package; (4) with a straight line dividing the two colored bands; and (5) a circular horizontally centered graphic element.

31. On information and belief, Defendant uses the Accused Packaging with actual knowledge of Scotts' MIRACLE-GRO Trade Dress, intending to capitalize on Scotts' reputation and goodwill in its Trade Dress, to confuse and deceive consumers, and to unfairly compete with Scotts.

32. Defendant has had, since March 3, 1998, constructive notice of Scotts' claim of ownership in its MIRACLE-GRO Trade Dress. *See* 15 U.S.C. § 1072.

33. Scotts has not authorized, licensed, or otherwise permitted Defendant's use of the Accused Packaging.

34. Defendant's use of the Accused Packaging in connection with lawn and garden products in interstate commerce, including in this District, is likely to cause confusion, mistake, and deception among the relevant purchasing public and the trade. Consumers and others will likely believe that Defendant's products in the Accused Packaging are associated with, or connected with, or approved or authorized by Scotts, or that Defendant's products in the Accused Packaging originate from the same source as Scotts' products, when that is not the case.

35. All of Defendant's foregoing acts have caused, and unless restrained by this Court will continue to cause, Scotts to suffer irreparable injury that has no adequate remedy at law.

36. On information and belief, Defendant earlier considered using a different container for its weed killer, by including a circular graphic element that overlaps the line dividing the colors, as shown below in the images below:




37. On information and belief, Defendant applied for state regulatory approval of the package design shown in ¶ 36, above.

**Defendant's Trademark Application**

38. On June 15, 2022, Defendant applied to register SPRUCE with the USPTO for use with *fertilizers* in International Class 1, and *insecticides* and *pesticides* in International Class 5. The USPTO assigned Serial No. 97/459,545 to Defendant's application.

9

39. Defendant filed the aforementioned trademark application on an "intent to use" basis. *See* 15 U.S.C. § 1051(b).

40. On December 18, 2023, the USPTO issued a Notice of Abandonment of Defendant's trademark application for Defendant's failure to file a Statement of Use or to request an extension of time to file the Statement of Use. *See* 15 U.S.C. § 1051(d)(1) and (2).

41. On March 2, 2024, after Defendant successfully petitioned to revive its application and requested extra time to file a Statement of Use, the USPTO gave Defendant until May 16, 2024, to file a Statement of Use or an extension of time to file the Statement of Use.

42. On May 15, 2024, Defendant requested extra time to file a Statement of Use or a further extension request. The USPTO granted Defendant request, extending the deadline to November 16, 2024.

43. On November 14, 2024, Defendant filed a Statement of Use, representing to the USPTO that it was then using SPRUCE in commerce on or in connection with fertilizers and first did so as early as November 1, 2024. As evidence of its then-current use the mark, Defendant submitted the following photograph:



44. On November 14, 2024, Defendant instructed the USPTO to delete "insecticides" and "pesticides" from its application.

## COUNT I : TRADEMARK INFRINGEMENT
## (REGISTERED TRADE DRESS), 15 U.S.C. § 1114(1)

45. Scotts repeats the allegations in Paragraphs 1 through 44 as though fully set forth herein.

46. Defendant's use in commerce of the Accused Packaging in connection with lawn and garden products for purchase by consumers is likely to cause confusion, mistake, or deception.

47. Defendant's use constitutes infringement under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

48. Defendant's unlawful acts alleged herein are intentional and willful.

49. As a result of Defendant's unlawful acts, Scotts is suffering irreparable harm that has no adequate remedy at law.

## COUNT II: FALSE DESIGNATION OF ORIGIN
## AND UNFAIR COMPETITION, 15 U.S.C. § 1125(A)

50. Scotts repeats the allegations in Paragraphs 1 through 49 as though fully set forth herein.

51. Defendant's use in commerce of the Accused Packaging in connection with lawn and garden products for purchase by consumers is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant or Defendant's lawn and garden products with Scotts, or with Scotts' products that use Scotts' MIRACLE-GRO Trade Dress, or as to the origin, sponsorship, or approval of Defendant's lawn and garden products.

52. Defendant's use constitutes false designation of origin and unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

53. Defendant's unlawful acts alleged herein are intentional and willful.

54. As a result of Defendant's unlawful acts, Scotts is suffering irreparable harm that has no adequate remedy at law.

## COUNT III: TRADE DRESS DILUTION BY BLURRING AND TARNISHMENT, 15 U.S.C. § 1125(c)

55. Scotts repeats the allegations in Paragraphs 1 through 54 as though fully set forth herein.

56. Scotts' MIRACLE-GRO Trade Dress is inherently distinctive and famous within the meaning of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

57. Scotts' MIRACLE-GRO Trade Dress became inherently distinctive and famous long before Defendant's unlawful acts alleged herein.

58. Defendant's use of the Accused Packaging on lawn and garden products has diluted, will dilute, and is likely to dilute the distinctive quality and fame of Scotts' MIRACLE-GRO Trade Dress.

59. Defendant's unlawful acts alleged herein are intentional and willful.

60. As a result of Defendant's unlawful acts, Scotts is suffering irreparable harm that has no adequate remedy at law.

## COUNT IV: VIOLATION OF OHIO'S DECEPTIVE TRADE PRACTICES ACT

61. Scotts repeats the allegations in Paragraphs 1 through 60 as though fully set forth herein.

62. By selling in commerce lawn and garden products in the Accused Packaging that is confusingly similar to Scotts' MIRACLE-GRO Trade Dress, Defendant is engaging in deceptive trade practices, in violation of Ohio's Deceptive Trade Practices Act as set forth in Ohio Revised

Code §§ 4165.01 through 4165.04. Among other things, Defendant is causing a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of its lawn and garden products sold in the Accused Packaging and as to the affiliation, connection, or association between those products and Scotts or its products.

63. Defendant willfully engaged in these unfair trade practices knowing them to be deceptive.

64. As a result of Defendant's unlawful acts, Scotts is suffering irreparable harm that has no adequate remedy at law.

## COUNT V: COMMON LAW UNFAIR COMPETITION

65. Scotts repeats the allegations in Paragraphs 1 through 64 as though fully set forth herein.

66. By selling in commerce lawn and garden products in the Accused Packaging, Defendant is creating a likelihood of confusion, mistake, or deception as to the source, origin, or sponsorship of its products, in view of Scotts' use of its MIRACLE-GRO Trade Dress. Defendant's use of the Accused Packaging in connection with lawn and garden products is likely to induce consumers to mistakenly believe that Defendant's products are affiliated, sponsored, sold, approved by, or connected with Scotts.

67. Defendant's conduct constitutes unfair competition under the common law of the State of Ohio.

68. Defendant willfully engaged in these acts knowing them to constitute unlawful competition.

69. As a result of Defendant's unlawful acts, Scotts is suffering irreparable harm that has no adequate remedy at law.

13

## JURY DEMAND

Scotts demands a trial by jury on all matters and issues triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Scotts prays that the Court enter Judgment finding, concluding, and declaring:

A. That Defendant's use of the Accused Packaging violates 15 U.S.C. §§ 1114(1), 1125(a), 15 U.S.C. § 1125(c), and Ohio statutory and common law;

B. That Defendant and its owners, parent companies, subsidiary companies, related companies, successors, assigns, officers, directors, agents, employees, and attorneys, and all persons or entities in active concert, participation, or privity with any of them, be permanently enjoined, pursuant to 15 U.S.C. § 1116 and all other applicable federal and state laws, from:

1. Using the Accused Packaging or any packaging design that is likely to cause confusion, mistake, or deception with Scotts' MIRACLE-GRO Trade Dress;

2. Using the Accused Packaging or any packaging design that is likely to dilute Scotts' MIRACLE-GRO Trade Dress;

3. Doing any other act or thing likely to induce the mistaken belief that Defendant or Defendant's goods sold in the Accused Packaging are in any way affiliated, connected, or associated with Scotts or its goods, and doing any other act or thing likely to cause confusion with Scotts' MIRACLE-GRO Trade Dress, or dilute Scotts' MIRACLE-GRO Trade Dress;

4. Injuring Scotts' business reputation and the goodwill associated with Scotts' MIRACLE-GRO Trade Dress and from otherwise unfairly competing with Scotts in any manner whatsoever;

      C.      That, pursuant to 15 U.S.C. § 1118, Defendant be ordered to deliver up for destruction all materials, including but not limited to labels, packaging, brochures, advertisements, literature, promotions, displays, catalogs, and all other matter in the custody or under the control of Defendant, bearing and/or displaying the Accused Packaging or any confusingly similar packaging;

      D.      That Defendant be ordered to recall from all customers, retailers, distributors, vendors, salespeople, and any other authorized agents all materials, including but not limited to, product packaging, brochures, advertisements, and promotions, bearing and/or displaying the Accused Packaging;

      E.      That Defendant be ordered to notify all customers, retailers, distributors, vendors, salespeople, and authorized agents of this Judgment;

      F.      That, pursuant to 15 U.S.C. § 1116, Defendant file with this Court and serve on Scotts, within thirty (30) days after entry of Judgment, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the Judgment;

      G.      That Scotts be awarded its direct and indirect damages resulting from Defendant's unlawful acts complained of herein;

      H.      That Scotts be awarded Defendant's direct and indirect profits realized from its sale of products in the Accused Packaging through the date of the Judgment;

      I.      That Defendant be ordered to pay increased damages and profits pursuant to, without limitation, 15 U.S.C. § 1117 for Defendant's knowing, intentional, and willful violations of federal and state law;

      J.      That Scotts be awarded its reasonable attorneys' fees, costs, and disbursements it has incurred in this action, pursuant to (without limitation) 15 U.S.C. § 1117(a);

K.      That Scotts be awarded all monetary and injunctive relief available under Ohio law; and

L.      That Scotts be awarded any such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ David M. DeVillers*
BARNES & THORNBURG LLP

David M. DeVillers (0059456)
41 South High Street, Ste. 3300
Columbus, OH 43215
Telephone: (614) 628-0096
Email: ddevillers@btlaw.com

John Gabrielides (*pro hac vice* forthcoming)
Valerie Matthews (*pro hac vice* forthcoming)
Adam Kaufmann (*pro hac vice* forthcoming)
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Telephone: (312) 357-1313
Email: jgabrielides@btlaw.com
       valerie.matthews@btlaw.com
       adam.kaufmann@btlaw.com

Attorneys for Plaintiffs