UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

THE SCOTTS COMPANY LLC, et al.,

   Plaintiffs,

  v.

THE PROCTER & GAMBLE COMPANY,

   Defendant.

Case No. 2:24-cv-4199

JUDGE DOUGLAS R. COLE
Magistrate Judge Vascura

## OPINION AND ORDER

Plaintiffs, owners of ROUNDUP® and ORTHO®, have a new competitor sprouting up: Defendant's Spruce® brand of weed killer products. Plaintiffs are suing the Defendant for Spruce's alleged trade dress infringement and—more specifically at issue here—false advertising. (Am. Compl., Doc. 60). Defendant moves to dismiss the false advertising claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Partial Mot. to Dismiss, Doc. 75). For the reasons below, the Court **GRANTS** that motion as to one of the alleged false or misleading statements in a rather limited fashion but **DENIES** it as to the rest.

## BACKGROUND[1]

Plaintiffs The Scotts Company LLC and OMS Investments, Inc. (collectively Scotts) take issue with Defendant The Procter & Gamble Company (P&G)'s new

---

[1] Because this matter is before the Court on Defendant's motion to dismiss, the Court must accept the well-pleaded allegations in the Complaint as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). So while the Court relies on the Complaint's

herbicide line called "Spruce." (Doc. 60). Scotts' primary complaint—i.e., Counts I–V—is that Spruce's packaging looks a whole lot like "Scotts' famous MIRACLE-GRO® trade dress." (*Id.* at #3899–905, 3913–16). In fact, Scotts was so concerned about consumer confusion that it asked this Court to preliminarily enjoin P&G from selling Spruce in its current packaging. (Doc. 2). The Court denied that motion. (Doc. 78). And because this Court previously (and extensively) recounted those claims and this matter's background in that order, the Court declines to repeat all of that here. By contrast, this Opinion discusses only Scotts' false advertising claim (Count VI) and P&G's motion to dismiss it. (Doc. 75).

Scotts' initial Complaint (and motion for a preliminary injunction) did not include allegations of false advertising. (Docs. 1, 2). But on April 9, 2025, some five months into this case, the parties filed a Joint Motion for Entry of Stipulated Order. (Doc. 58). There, it asked the Court to grant leave to Scotts to file an amended complaint adding a new claim for false advertising. (Doc. 58-1, #3893). The parties also asked the Court to rule that this new "Count VI" not be addressed at or in the hearing, briefing, and ruling regarding the pending Motion for Preliminary Injunction. (*Id.* at #3893–94). It also requested P&G's response to be due on or before June 6, 2025. (*Id.* at #3893). The Court granted those requests, (Doc. 59), and Scotts filed its Amended Complaint (Doc. 60).

---

allegations to recount the case's background, it reminds the reader that they are just that—allegations.

2

The Amended Complaint advances a new Count VI for false advertising under 15 U.S.C. § 1125(A), a provision of the Lanham Act. (*Id.* at #3916). The fresh complaint also added factual allegations in support of that claim, as well as additional requests for relief. (*Id.* at #3907–12, 3917–18). The root of the claim is that P&G "make[s] numerous false and misleading statements about the effectiveness and qualities of its Spruce weed killer." (*Id.* at #3907). Specifically, Scotts points to four different P&G statements that, when combined with certain visuals, amount to false advertising.

In what the parties call Statement 1, Scotts points to the phrase "Dead Weeds in 1 Day" and its accompanying visuals (included below). (*Id.*). During Spruce television commercials, a voiceover and on-screen text both state the phrase. (*Id.*). According to Scotts, this claim is "literally false" because Spruce weed killer will not kill the entire weed within one day. (*Id.* at #3908). This is because it is a "minimum risk product" as defined by the Environmental Protection Agency, and "[t]o date, all minimum risk products work by making contact only with the exposed portions of the plant and none directly affects the roots of the plant." (*Id.*). So, while "[w]ith regular application at certain dosages over time, a minimum risk product may eventually exhaust the roots' storage of nutrients by repeatedly removing its leaves," it will not kill the entire weed within one day. (*Id.*). In other words, Scotts argues that because Spruce does not kill a weed's root system in one day, it is factually false to assert "Dead Weeds in 1 Day."

3

 

A voiceover speaks Statement 2 alongside the same visuals as above. (*Id.*). The phrase goes: "Spruce works differently by dehydrating the weed down to the roots for dead weeds in just 1 day." (*Id.*). Scotts states that this is "literally false" and misleading for the same reason as the previous statement—Spruce weed killer does not directly affect the roots of the plant. (*Id.* at #3908–09).

Multiple promotions of Spruce weed killer contain Statement 3, as displayed below. (*Id.* at #3909–10). In each, P&G claims that its product provides "FAST Visible Results Within 1 Hour" or "visible results in 1 hour," accompanied by before and after visual depictions. (*Id.*). Scotts alleges that these "after-application images do not accurately portray typical results" of Spruce weed killer's effects after only one hour. (*Id.* at #3911). So, because the treated plants do not actually have the indicated appearance after an hour like the captions imply, the advertisements are misleading. (*Id.*).

4






Statement 4 is an advertisement displayed on P&G's website (spruceit.com). (*Id.*). The website displays a graphic (included below) titled "Spruce Works DIFFERENTLY." (*Id.*). Similar to Statement 3, the graphic depicts a before and after, stating that "WEEDS DEHYDRATE TO DEATH," "1 HR," and that "Without water, weeds dehydrate and die fast, showing visible results in 1 hour." (*Id.*). Scotts argues that this advertisement is false and misleading both because it will deceive consumers into believing (1) that weeds will "dehydrate to death" within one hour of application, when the weed does not actually die in one hour, and (2) that the after photo accurately portrays the typical effect of the weed killer after one hour, when it does not. (*Id.* at #3912).

5



That brings us to P&G's Partial Motion to Dismiss (Doc. 75). There, P&G addresses only Scotts' false advertising claim, asking the Court to dismiss it for failure to state a claim. (*Id.* at #6432). As a sort of threshold matter, P&G first argues that Federal Rule of Civil Procedure 9(b)'s heightened pleading standard (as opposed to the typical, lower Rule 8(a) standard) governs the false advertising claim because that claim "sounds in fraud." (*Id.* at #6441–42). Basically, P&G argues that Scotts' allegations are cast in "classic terms of fraud"—or more simply, accuse P&G of defrauding consumers—and so implicate Rule 9(b)'s purpose. (*Id.*). As for the substance of the motion, P&G argues that the Amended Complaint fails to plead facts demonstrating the required elements for a Lanham Act false advertising claim. (*Id.* at #6442–51). Specifically, P&G focuses on two elements, arguing that Scotts fails to plausibly allege that any of the statements are false or misleading and fails to allege why and how the statements injured Scotts. (*Id.*).

6

Scotts responded, (Doc. 77), and P&G replied, (Doc. 79). This matter is now ripe for the Court's review.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing plausibility, the Court "construe[s] the complaint in the light most favorable to the plaintiff." *Bassett*, 528 F.3d at 430.

Typically, at the motion-to-dismiss stage, a plaintiff need only plead sufficient facts to create a plausible inference it can eventually prove all the required elements. *See* Fed R. Civ. P. 8(a). But when a plaintiff's claim sounds in fraud, the plaintiff must also satisfy Federal Rule of Civil Procedure 9(b) to survive a motion to dismiss. Rule 9(b) requires that, "in any complaint averring fraud or mistake, 'the circumstances constituting fraud or mistake shall be stated with particularity.'" *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (quoting Fed. R. Civ. P. 9(b)).[2] The requirement "reflects the rulemakers' additional understanding

---

[2] The Court notes that the text of Rule 9 was altered in the 2007 amendments to the Federal Rules of Civil Procedure. *Contrast Yuhasz*, 341 F.3d at 563 (quoting the then-current version of Rule 9(b) as requiring that "the circumstances constituting fraud or mistake shall be stated

7

that, in cases involving fraud and mistake, a more specific form of notice is necessary to permit a defendant to draft a responsive pleading." *In re EveryWare Glob., Inc. Secs. Litig.*, 175 F. Supp. 3d 837, 849 (S.D. Ohio 2016) (quoting *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008)).

## LAW AND ANALYSIS

**A.     The Court Declines to Apply the Heightened 9(b) Pleading Standard.**

As noted above, to decide the motion, the Court must rule on a threshold matter. Generally, to survive a 12(b)(6) motion a complaint need only satisfy Federal Rule of Civil Procedure 8(a)'s requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief," and it "does not need detailed factual allegations." *Twombly*, 550 U.S. at 555. P&G, however, argues that Scotts' false advertising claim must also meet Rule 9(b)'s heightened pleading requirements because it "sounds in fraud." (Doc. 75, #6441). But P&G admits that "[n]o Circuit has yet ruled on whether Rule 9(b)'s pleading standard generally applies to Lanham Act false advertising claims." (*Id.*). It also concedes that the only court to consider that question in *this* district declined to apply Rule 9(b). (*Id.* (citing *Roof Maxx Techs., LLC v. Tabbert*, No. 2:20-cv-3156, 2021 WL 3617158, at *12 (S.D. Ohio Aug. 16, 2021))). So, in a sense, P&G is asking the Court to break new ground. The Court declines to do so.

---

with particularity"), *with* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). As the committee note provides, however, these "changes are intended to be stylistic only." Fed. R. Civ. P. 9 advisory committee's note to 2007 amendment. Thus, although the text that *Yuhasz* quotes is no longer operative, the content of the norm that the text expresses still controls the analysis here.

8

The Sixth Circuit has been clear that the Rule 9(b) standard applies to all claims that sound in fraud, extending even to some claims where fraud is not technically an element. *Kolominsky v. Root, Inc.*, 100 F.4th 675, 683 (6th Cir. 2024) (collecting cases). But that alone does not compel the result P&G seeks. As best as the Court can glean, P&G's theory of the law is that "if an element of any claim 'requires an allegation of duplicity,' it 'implicates Rule 9(b)'s purpose' and, therefore, Rule 9(b)'s heightened pleading standard applies." (Doc. 75, #6441 (quoting *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 248 (6th Cir. 2012))). And, according to P&G, because Scotts charges P&G with making false and misleading statements in a deliberate effort to deceive consumers, (or in other words, for a *duplicitous* purpose) Rule 9(b) applies. (*Id.* at #6442).

This reasoning does not persuade the Court. Indeed, let's assume P&G's "test" is sound. Lanham Act false advertising claims do not have a scienter element, so it is hard to see how they would require an allegation of duplicity. *Tempur-Pedic Int'l Inc. v. Angel Beds LLC*, 902 F. Supp. 2d 958, 965–66 (S.D. Tex. 2012) (citation omitted) ("Given that section 43(a) does not contain a scienter element, the Court finds that section 43(a) is not concerned with fraud and therefore claims brought pursuant to this provision do not fall within the ambit of Rule 9.").

True, the Sixth Circuit has applied the Rule 9(b) pleading requirements to causes of action missing an intent requirement on par with the intent required for fraud—for example, to innocent misrepresentation. *Smith v. Bank of Am. Corp.*, 485 F. App'x 749, 752–53 (6th Cir. 2012). But typically, courts do so when a "unified course

9

of fraudulent content" forms the basis of those non-fraud claims—especially if pleaded alongside fraud. *Kolominsky*, 100 F.4th at 683. Or put another way, when a plaintiff fails to "adequately plead an independent basis of liability for the negligent misrepresentation claim" separate and apart from the allegations of fraud, courts apply Rule 9(b). *In re Nat'l Century Fin. Enters., Inc.*, 504 F. Supp. 2d 287, 321–22 (S.D. Ohio 2007). The point of this is to prevent a plaintiff from avoiding Rule 9(b) by grafting his or her fraud allegations onto a different cause of action. *Id.*

But here Scotts' false advertising claim is based on the allegedly false and misleading nature of the statements themselves, not on the allegation that P&G is "willfully … intending to deceive consumers." (Doc. 60, #3916). That is, if the statements are false, liability could attach even absent intent. So there is no indication that Scotts' *actual* claim is fraud, with the false advertising claim only pled to circumvent Rule 9(b)'s strictures.

On a more general level, Lanham Act false advertising claims, while also based on "false" statements, seem different in kind than traditional fraud claims. The purpose of Rule 9(b) is to require a plaintiff to identify specific statements and provide explanations of how those statements defrauded him or her so that defendants have sufficient notice to respond. *See EveryWare Glob.*, 175 F. Supp. 3d at 849. But allegedly false or misleading advertisements typically run over an extended period of time, making it "unreasonable and contrary to the Sixth Circuit's liberal construction of Rule 9(b) to require Plaintiff[s] to identify the exact day, hour or place of every advertisement" that caused them harm. *Fed. Exp. Corp. v. U.S. Postal Serv.*, 40 F.

10

Supp. 2d 943, 952 (W.D. Tenn. 1999). Here, Scotts clearly identifies the four statements that it believes are false or misleading, and that provides P&G all of the notice needed for it to respond.

Lanham Act claims like the one here are also different from typical fraud claims in another important respect. In the typical fraud case, the plaintiff is the person to whom the statement is made. And that person suffered harm by relying on the fraudulent statement. But in its false advertising claim here, Scotts is not alleging that *it* was defrauded. Rather, its concern is that *others* will be, which will in turn interfere with Scotts' ability to sell competing products to those consumers. But given that Scotts itself was not the defrauded entity, some of the who, what, when, where, and why questions that form the typical grist for Rule 9(b) may turn on information that Scotts itself does not have—information that instead rests only with the allegedly defrauded customers.

In sum, the Court declines to impose Rule 9(b)'s heightened pleading requirements on Scotts' claim.

**B.     Scotts Pleads a Plausible False Advertising Claim under the Lanham Act.**

The Lanham Act creates a cause of action for false advertising. 15 U.S.C. § 1125(a)(1)(B); *FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*, 97 F.4th 444, 452–53 (6th Cir. 2024). To succeed on a false advertising claim, a plaintiff must show that:

> (1) the defendant has made false or misleading statements of fact concerning his product or another's; (2) the statement actually deceives or tends to deceive a substantial portion of the intended audience; (3) the

11

>statement is material in that it will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; and (5) there is some causal link between the challenged statements and harm to the plaintiff.

*Campfield v. Safelite Grp., Inc.*, 91 F.4th 401, 411 (6th Cir. 2024) (citation and bracket omitted).

So, to survive a motion to dismiss, a complaint must allege facts that allow a court to reasonably infer that each of these elements are present. *Iqbal*, 556 U.S. at 678. P&G argues that Scotts fails to plausibly allege a false or misleading statement of fact—the first element. (Doc. 75, #6443–50). Separately, P&G argues that Scotts has only asserted "a formulaic recitation of the other elements of the Lanham Act claim"—citing the injury element as the main example. (*Id.* at #6450–51). While the Court partially grants P&G's motion as to Statement 1, it denies the rest.

### 1. Scotts Plausibly Alleges Statements 2, 3, and 4 to be False or Misleading, but Fails to Allege that Statement 1 is Literally False.[3]

For a plaintiff to recover damages for a false statement it must plead (and later prove) that the statement is "literally false." *FedEx Ground Package Sys., Inc.*, 97 F.4th at 453. "A literally false statement is bald-faced, egregious, undeniable, over the top … [but a] statement is not literally false if it *reasonably conveys different messages*." *Id.* (emphasis added). By contrast, "[a] misleading statement is 'literally true, yet deceptive, or too ambiguous to support a finding of literal falsity.'" *Id.* at 454 (quoting *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of*

---

[3] While Scotts alleges Statements 1, 2, and 4 to be both false and misleading, it only alleges Statement 3 to be misleading. (Doc. 60, #3908, 3911, 3912)

12

*Podiatric Surgery, Inc.*, 185 F.3d 606, 614 (6th Cir. 1999)). And to recover for a misleading statement of fact, a "plaintiff must demonstrate that a 'significant portion' of reasonable consumers were *actually* deceived by the defendant's messaging.'" *Id.* (quoting *Wysong Corp. v. APN, Inc.*, 889 F.3d 267, 271 (6th Cir. 2018)) (emphasis in original).

    a.  **Statement 1.**

Statement 1, accompanied by visuals, is featured in television advertisements. (Doc. 60, #3907–09). The on-screen visuals depict droplets contacting a weed, and then a dead weed. Statement 1 itself, "dead weeds in 1 day," is displayed as text and spoken in a voiceover. (*Id.* at #3907). Scotts' argument goes something like this: Spruce is categorized as a "minimum risk" pesticide. (*Id.* at #3908). Minimum risk products work by making contact with the exposed portion of the plant and do not directly affect the roots (a product that directly affects the roots is known as a systemic product). (*Id.*). Because Spruce weed killer does not directly affect the weed's roots, it does not (indeed cannot) kill the *entire* weed within one day (as the roots are still alive). (*Id.*).

P&G, pointing out that the visuals do not depict the subterranean portion of the plant, argues that the statement does not convey the message that Spruce affects a plant's roots. (Doc. 75, #6445). Specifically, while depicting Scotts as claiming "that a 'dead weed' can refer *only* to a plant whose roots are dead," P&G argues that, in actuality, "a 'dead weed' refers to a plant evidencing visible necrosis as featured in

the accompanying image." (*Id.* at #6445–46). Or at the very least, "dead weed" is "susceptible to varying interpretations." (*Id.*).

Remember, a statement cannot be literally false if it reasonably conveys multiple meanings. *FedEx Ground Package Sys., Inc.*, 97 F.4th at 453. The Court finds that to be the case here. While consumers might plausibly take "dead weed" to mean that the entire plant is dead, and will not grow back, consumers could also plausibly consider a weed evidencing visible necrosis (i.e., the visible green part is now brown and dead) to be a "dead weed." So, the Court concludes that the meaning of the "dead weeds" part of "dead weeds in 1 day" is ambiguous, and "only an unambiguous message can be literally false." *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 737 (6th Cir. 2012) (cleaned up). So, the Court grants the motion to dismiss as to Scotts' claim that Statement 1 is literally false.

But Scotts also pleads that Statement 1 is "likely to mislead a substantial number of consumers," and explains enough facts for the Court to infer why that may be so. It is plausible to believe that the statement would deceive a significant number of consumers into thinking Spruce weed killer kills the whole plant, including the roots, in one day—i.e., into thinking that the product is more effective than it actually is. (*See* Doc. 60, #3908). Whether that is actually the case, both as to the effectiveness of Spruce and as to whether a significant number of consumers are deceived, are questions for a later day, questions whose answers will turn on evidence not currently before the Court. But there is enough here that the Court needs to see that evidence.

14

Accordingly, the Court denies the motion as to the claim that Statement 1 is misleading.

### b. Statement 2.

A voiceover speaks Statement 2, that "Spruce works differently by dehydrating the weed down to the roots for dead weeds in just 1 day," alongside the same visual images in Statement 1 (in presumably the same television advertisements). (*Id.* at #3908–09). Scotts' allegations here are the same as Statement 1—because Spruce is a "minimum risk" product it does not directly kill the roots of the weed, making it both literally false and misleading for P&G to say that its weed killer will dehydrate the weed "down to the roots for dead weeds in just 1 day." (*Id.*).

P&G has the same counter. (Doc. 75, #6446). Once again, P&G claims that because no roots are depicted, there is no reason for a consumer to believe that it is suggesting that "dead weeds" refers to subterranean root necrosis and, similarly, "down to the roots" means everything *but* the roots. *(Id.)*.

The Court finds P&G's alternate explanation here less plausible than that for Statement 1. Statement 2 explicitly states that "Spruce works … by dehydrating the weed *down to the roots*." (Doc. 60, #3908 (emphasis added)). This is not ambiguous. The obvious meaning of this statement is that Spruce works—apparently in contrast to other weed killers—by dehydrating the whole plant, *including* the roots. It is not plausible that reasonable consumers would take the phrase "down to the roots" to mean just the above-ground portion of the weed. "Down to the [whatever thing]" conveys finality and the exhaustion of that thing. If coffee is good "down to the last

15

drop," one expects that the last drop will be good, as well. And if an event is planned "down to the last detail," that means that the last detail is accounted for, too. True, sometimes phrases using this structure can mean something like "everything is gone except the thing." For example, if a house is burned "down to the ground," that does not suggest that the ground itself has burned. But even then, "down to [something]" means that the entirety of the thing is exhausted. The house burning "down to the ground" means that everything that can burn has; no part remains. Either way, weeds dehydrated "down to the roots" conveys that the roots, too, are dehydrated. Accordingly, there are not multiple reasonable interpretations of Statement 2 and Scotts has sufficiently alleged that it is literally false and misleading.

### c. Statement 3.

In certain Spruce "promotions," P&G claims that its product provides "FAST Visible Results Within 1 Hour" or "visible results in 1 hour" alongside before and after visuals. (Doc. 60, #3909). The Amended Complaint provides three of these visuals, each depicting a before and after image of a weed accompanied by statements suggesting observable results after one hour. (*Id.* at #3909–10). According to Scotts, these "after-application images do not accurately portray typical results of the application of Defendant's Spruce weed killer after only one hour." (*Id.* at #3911). So, "the combination of the statements with the visuals are misleading and likely to deceive a substantial portion of consumers into believing that the after-application images accurately portray the typical effect of Defendant's product after only one

16

hour." (*Id.*). Unlike Statements 1, 2, and 4, Scotts does not allege that Statement 3 is literally false, only that it is misleading. (*Id.*).

P&G posits that Scotts pled insufficient details regarding Statement 3, failing to give it sufficient notice of the claim, meaning it is left to guess *why* Scotts thinks the images are not accurate and typical. (Doc. 75, #6448–49). The Court is unconvinced. From the context it is abundantly clear that Scotts is alleging that weeds treated with Spruce weed killer will not have the visible results in one hour that the images depict. Or in other words, if you spray weeds with Spruce and wait one hour, the weeds do not in fact look like the pictures. Whether these images are actually inaccurate, and if the images and statements together are actually misleading consumers, are issues the Court will address later.

### d. Statement 4.

Statement 4 is a lot like Statement 3. Statement 4 is an advertisement displayed on P&G's website (spruceit.com). (Doc. 60, #3911). There, a graphic titled "Spruce Works DIFFERENTLY," is again accompanied by before and after-one-hour images. (*Id.* at #3911–12). Once again, the first image is a weed, and the second image is the same weed, this time dried out and sad looking; additionally, text accompanies the after image: a "1 HR" text graphic and the statement "WEEDS DEHYDRATE TO DEATH." (*Id.* at #3911). According to Scotts, this "advertisement, taken as a whole, is false and misleading because it is likely to deceive a substantial portion of consumers into believing that (i) weeds will 'dehydrate to death' within one hour of application of Defendant's Spruce weed killer and (ii) the image of the severely

17

damaged plant accurately portrays the typical effect of Defendant's product after one hour." (*Id.* at #3912).

P&G again argues that this allegation should be dismissed because Scotts' assertion "hinges on [its] apparent contention that weed death is only achieved by subterranean root necrosis." (Doc. 75, #6450). The Court disagrees. Unlike Statement 1, Scotts' allegations do not depend on "weed death" requiring root death. Even if "dehydrate to death" means what P&G posits—that the visible part of the weed is exhibiting necrosis—Scotts has alleged the advertisement to be false and misleading because it is alleging that the weed will not look like the visual depiction within one hour, regardless of any effect on the roots. (Doc. 60, #3912). The Court denies the motion as to Statement 4.

### 2. Scotts has Sufficiently Alleged the Other Elements.

P&G separately argues that Scotts has "asserted only a formulaic recitation of the other elements of the Lanham Act claim." (Doc. 75, #6450). The Court disagrees. Despite the broad reference to "other elements," it seems P&G in fact only disputes whether Scotts has made the necessary showing as to the injury element. (*Id.*). According to P&G, Scotts makes "minimal effort to allege *why* and *how* they will suffer an injury in the form of lost sales or otherwise." (*Id.* (emphasis in original)). Scotts' allegations in the Amended Complaint on that front are that it makes "competitive weed killers," and that a "significant portion of consumers who mistakenly believe [P&G's] false and/or misleading statements about its Spruce weed

18

killer are likely to purchase Defendant's product instead of Scotts' competitive products." (*Id.* (quoting Doc. 60, #3912)).

Typically, to pursue a statutory claim for false advertising under the Lanham Act, a plaintiff must "come within the zone of interests," meaning he or she "must allege an injury to a commercial interest in reputation or sales." *Lexmark Int'l., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–32 (2014). Second, that injury must be "proximately caused by violations of the [Lanham Act]." *Id.* at 132. "Though in the end consumers also benefit from the Act's proper enforcement, the cause of action is for competitors, not consumers." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014). "Competitors are within the class that may invoke the Lanham Act because they may suffer 'an injury to a commercial interest in sales or business reputation proximately caused by [a] defendant's misrepresentations.'" *Id.* (quoting *Lexmark*, 572 U.S. at 140).

Scotts alleges that it sells competitive weed killers and that because of P&G's false or misleading statements a significant portion of consumers are likely to purchase Spruce over Scotts' competing products. (Doc. 60, #3912). That sure seems likely enough. True, the Amended Complaint would be more complete if it listed the specific competitive products and provided allegations of how sales have been harmed. But the Court does not buy P&G's claim that it does not know what Scotts is talking about. Elsewhere in this matter, P&G itself states that "Scotts sells several leading brands of herbicides—ROUNDUP, the category leader, and ORTHO," as part of an argument that defending these brands from Spruce's competition is Scotts'

19

motive for bringing this entire action. (Doc. 71, #6038). This cuts directly against P&G's claim that it is "left to guess as to which products in Plaintiff's portfolio are at issue." (Doc. 75, #6450–51). Regardless, the Court finds Scotts' allegations of injury in the Amended Complaint sufficient for this claim to survive at the motion-to-dismiss stage.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant The Procter & Gamble Company's Partial Motion to Dismiss (Doc. 75) as to Scotts' claim that Statement 1 is literally false, and **DENIES** the remainder of the motion.

**SO ORDERED.**

February 20, 2026
 **DATE**                                        **DOUGLAS R. COLE**
                                                 **UNITED STATES DISTRICT JUDGE**